UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| FLORIDA MAE YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:25-cv-280 |

**MEMORANDUM AND ORDER**

Plaintiff Florida Mae Young ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her disability insurance benefits ("DIB") [Doc. 1]. Plaintiff filed a brief in support of her claim on January 2, 2026 [Doc. 12]. The Commissioner filed his response on April 1, 2026 [Doc. 18], and Plaintiff filed a reply on Apri l5, 2026 [Doc. 19]. This matter is ripe for review. For the reasons stated below, (1) Plaintiff's request for relief will be **DENIED**, and (2) the Commissioner's request that the final decision denying benefits be affirmed will be **GRANTED**.

## I. ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 9 ("Tr.")], Plaintiff protectively filed an application for DIB on September 14, 2022, alleging disability beginning March 17, 2020 (Tr. 32). Plaintiff's claims were denied initially and on reconsideration at the agency level, and Plaintiff requested a hearing before an ALJ. The hearing was conducted by phone on May 28, 2024 (the "Hearing").

On July 2, 2024, the ALJ issued a decision finding Plaintiff had not been under a disability, as defined in the Social Security Act, at any time between her alleged onset of disability date and the date she was last considered insured for DIB purposes (September 30, 2021) (Tr. 42). The Appeals Council denied Plaintiff's request for review on June 23, 2025 (Tr. 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on August 22, 2025 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on January 22, 1958 (Tr. 41), making her 62 years old on the alleged onset of disability date, which is considered an individual "closely approaching retirement age (age 60 or older)." 20 C.F.R. § 404.1563. She has a high school education with a general equivalency diploma ("GED") and a certificate in data entry operations, and she is able to communicate in English (Tr. 41). She has past relevant work as a security guard and a driver, which are classified in the Dictionary of Occupational Titles ("DOT") as being light in terms of the level of physical exertion required. The security guard occupation has an SVP of 3 and the driver job has an SVP of 2.[1] The ALJ found these classifications were consistent with Plaintiff's past relevant work as generally performed in the national economy and as actually performed by Plaintiff.

[1] SVP stands for Specific Vocational Preparation, "which is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance of a job." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851 n.6 (6th Cir. 2010).

### B. Medical Records

In her October 2022 Adult Disability Report, Plaintiff alleged disability due to rheumatoid arthritis, generalized anxiety disorder, and an umbilical hernia (Tr. 317). Plaintiff reported no change in her physical or mental conditions in her May 2023 Disability Report (Tr. 334) or her January 2024 Disability Report (Tr. 349). While there is no need to summarize all the medical records herein, relevant records have been reviewed.

### C. Hearing Testimony

Plaintiff testified at the Hearing, as did vocational expert Robert Grant (the "VE"). Plaintiff was represented at the Hearing, although by a different attorney than the one currently representing her in these federal court proceedings. The Court has carefully reviewed the transcript of the Hearing (Tr. 48–76).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

20 C.F.R. § 404.1520(a)(4)(i–v); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

**B. The ALJ's Findings**

At step one of the five-step process, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2021, and that she had not engaged in substantial gainful activity between her alleged onset of disability date (March 17, 2020) and her date last insured (Tr. 35).

At step two, the ALJ found Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease (COPD) with history of bronchitis/asthma and

osteoarthritis/degenerative joint disease of the right knee." (Tr. 35). The ALJ also found Plaintiff had a history of gastroesophageal reflux disease ("GERD"), hypertension, and depressive disorder, the ALJ found these impairments did not cause more than mild limitations in Plaintiff's ability to perform basic physical and mental work activities through the date last insured, and so the ALJ found these impairments were non-severe.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 37). Next, taking all this information into consideration, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following additional qualifications/limitations:

- For lifting and carrying, she is limited to 50 pounds occasionally and 25 pounds frequently.
- She can stand/walk for up to about six hours, and sit up to about six hours in an eight-hour workday, with normal breaks.
- She can frequently climb, balance, stoop, kneel, crouch, and crawl.
- She must avoid concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation.

(Tr. 37).

At step four, the ALJ found Plaintiff was unable to perform her past relevant work. At step five however, the ALJ found there were occupations with jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including metal furniture assembler and night cleaner (Tr. 41–42).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between her alleged onset of disability date and the date Plaintiff last met the insured status requirements (Tr. 42).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings [Doc. 12 at Page ID # 789]. She contends the ALJ's assigned RFC is not supported by substantial evidence because "the ALJ failed to weigh the opinion evidence in accordance with the regulations." [*Id.* at Page ID # 783]. Specifically, Plaintiff argues the ALJ committed harmful error by failing to properly address the supportability and consistency factors in 20 C.F.R. § 404.1520c when weighing the opinion of one of Plaintiff's treating providers, Anne Mainardi, M.D. This error is not harmless, Plaintiff argues, because the limitations assessed by Dr. Mainardi would have precluded all work if they had been adopted.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole,

"taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

A court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). A court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (assignments of error not made by claimant waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

### B. Medical Opinion Evidence

A claimant's RFC is the most they can do—not the least—despite their impairments. 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

When evaluating medical opinion evidence, pursuant to 20 C.F.R. § 404.1520c, the ALJ is required to consider multiple factors, including: (1) supportability, (2) consistency, (3) a source's relationship with the claimant, including the length of the relationship, the frequency of any examinations, and the types of testing performed; (4) specialization, and (5) other supporting or contradicting factors.[2] This rule, which applies only to claims (like Plaintiff's) filed on or after March 27, 2017, "notably reduces the articulation standards required for ALJs in assessing medical source opinions" from the standards applicable to earlier-filed claims. *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (cleaned up and citation omitted). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. Aug. 2, 2019) (citation omitted). While the ALJ is required to consider the other

[2] Plaintiff cites to 20 C.F.R. § 404.1527 as part of her argument in her opening brief. The parties agree, however, that 20 C.F.R. § 404.1520c applies, as Plaintiff's DIB application was filed after March 27, 2017. [*See* Doc. 19 at Page ID # 810–11].

relevant factors, the ALJ is not required to explain their consideration in the written decision. 20 C.F.R. § 404.1520c(b).

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 1520c(c)(1); *see also Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *1 (6th Cir. 2022) ("[T]he ALJ evaluates 'the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors.'" (quoting *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022))). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c(c)(2).

**C. Dr. Mainardi's Opinion**

As mentioned, Plaintiff challenges the ALJ's assessment of Dr. Mainardi's opinion. Dr. Mainardi, a pulmonologist, prepared a treating source statement regarding Plaintiff's physical conditions on April 1, 2024. She opined that Plaintiff can only rarely lift and carry up to ten pounds, and can never lift and carry anything weighing ten pounds or more (Tr. 664). She opined that Plaintiff can sit for up to seven hours in an eight-hour workday, and she can stand or walk only one hour in an eight-hour workday (Tr. 664). Dr. Mainardi also assessed postural restrictions, environmental restrictions, restrictions related to reaching, handling, fingering, feeling, and

pushing/pulling (Tr. 665), and significant restrictions related to staying on task and being absent from work (Tr. 663).

Dr. Mainardi indicated she was treating Plaintiff for "COPD with severe airflow obstruction, tobacco use disorder" (Tr. 663). When asked to identify the "particular medical or clinical findings" that support her various assessed restrictions, Dr. Mainardi wrote: "pulmonary function test with severe airflow obstruction/CT scan with emphysema," as well as "chronic respiratory problems, frailty, shortness of breath" (Tr. 664, 666).

**D. The ALJ's Decision**

The ALJ began his RFC assessment by discussing in detail Plaintiff's own description of her symptoms, about which Plaintiff testified at the Hearing:

> The claimant testified that she had mild knee pain and knee swelling when she stopped working in 2020. She stated that she used a wrap and a cream to treat her knee. She also stated that she used a medication to treat her knee pain, but it did not help. The claimant testified that she did not undergo injections to treat her knee pain.
>
> **The claimant also testified that she has had bronchitis in the past and breathing problems for the past two to two and a half years. She stated that COPD was diagnosed six months ago and had a recent hospitalization for one week due to a COPD exacerbation.** She testified that she currently uses an inhaler on a daily basis, and she requires treatment with a nebulizer every three to four months. The claimant testified that her breathing problems are aggravated by heat, cold, and playing with her grandchildren. She further testified that she was smoking a pack of cigarettes per day, but she quit smoking approximately three months ago.
>
> The claimant further testified **that she has a hernia, which was diagnosed a year ago**. She stated that her hernia causes tenderness and needs to be removed. The claimant testified that she can only lift 10 pounds and has shortness of breath with walking. She also stated that she is unable to stand long periods. . . . She also indicated that she lived alone prior to her most recent hospitalization for her COPD exacerbation, and she currently lives with her daughter. The claimant testified that she does household tasks such as doing laundry, some cooking, and going to the grocery store. She stated that she was able to perform these activities in March 2020, but it took her a little more time.

(Tr. 38 (emphasis and paragraph breaks added)).

The ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause some symptoms," but that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 38). The ALJ then went on to discuss the medical record regarding Plaintiff's physical impairments as follows:

> Treatment records prior to the date last insured document the claimant's chronic right knee pain (Ex. 2F, pgs. 26, 33). X-rays of the claimant's right knee performed on September 20, 2021, showed no fracture or malalignment of the knee, but did show tricompartmental joint space narrowing and osteophytosis, indicative of osteoarthritis, and prominent joint effusion (Ex. 2F, pg. 66). The medical evidence indicates the claimant's knee pain was generally controlled with prescription medication, meloxicam, through the date last insured (Ex. 2F). Furthermore, the medical evidence shows the claimant did not have more extensive treatment such as steroid injections or knee surgery through the date last insured. The evidence considered in its entirety suggests that the claimant retained the ability to perform work at the medium exertional level with limitations for no more than frequent postural activities through the date last insured, despite her knee impairment.
>
> Treatment records prior to the date last insured also document the claimant's shortness of breath and history of acute bronchitis (Ex. 2F[,] pg. 26). X-rays of the claimant's chest performed on January 26, 2020, which was about two months prior to the alleged onset date of disability, showed no acute cardiopulmonary abnormality (Ex. 2F, pg. 68).
>
> **The medical evidence indicates the claimant's respiratory impairment was generally controlled with the use of an albuterol inhaler through the date last insured (Ex. 2F). Moreover, the claimant did not require treatment for complications of asthma/COPD or emergency room visits for exacerbations of asthma/COPD in the period of issue from March 17, 2020, the alleged onset date of disability, through September 30, 2021, the date last insured**.
>
> It is reasonable to conclude the claimant had to avoid concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation through the date last insured.

(Tr. 38–39 (emphases and paragraph break added)).

The ALJ concluded his explanation of Plaintiff's physical RFC assessment by addressing the medical opinion evidence:

> As for the medical opinions and prior administrative medical findings, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources. The undersigned fully considered the medical opinions and prior administrative medical findings in this case as follows:
>
> On April 20, 2023, Anita Johnson, M.D., viewed the evidence and opined that for the period on and before the date last insured, the claimant could perform work at the medium exertional level with environmental limitations (Ex. 2A). On December 14, 2023, George Walker, M.D., viewed the evidence and also opined that for the period on and before the date last insured, the claimant could perform work at the medium exertional level with environmental limitations (Ex. 4A). **The undersigned finds the opinions of Dr. Johnson and Dr. Walker are generally persuasive because they are generally consistent with the claimant's treatment records through the date last insured. However, the evidence considered in its entirety shows the claimant was also limited to frequent postural activities through the date last insured due to her knee impairment.**
>
> **On April 1, 2024, Anne Mainardi, M.D., submitted a medical source statement form regarding the claimant's physical limitations. In her responses, Dr. Mainardi opined limitations that would preclude the claimant from all full-time work activity (Ex. 4F). The undersigned finds Dr. Mainardi's opinion is not persuasive because it is not supported by the claimant's treatment records through the date last insured. Additionally, Dr. Mainardi indicated in April 2024, that she had only treated the claimant for one year and had seen her every six months (two visits).**
>
> . . . .
>
> In sum, the claimant's allegations regarding the nature and severity of her impairment-related symptoms and functional limitations are not entirely consistent with the evidence for the relevant period in question. While the medical and other evidence of record supports some of the allegations regarding these symptoms, the alleged severity thereof, and alleged functional restrictions are not well supported. The undersigned has carefully read and considered all the evidence of record and finds the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence of record than the allegations made by the claimant. Accordingly, the claimant's determined residual functional capacity is well supported and justified.

(Tr. 39–40 (emphasis added)).

### E. Application

To qualify for DIB, Plaintiff was required to establish that she met the requirements of disability prior to the expiration of her insured status, i.e., prior to her date last insured (September 30, 2021). *See* 20 C.F.R. §§ 404.130 & 404.131. As the Commissioner emphasizes, Plaintiff did not begin treating with Dr. Mainardi until May 2023, and Dr. Mainardi's opinion is dated April 1, 2024. Nothing about Dr. Mainardi's opinion indicates that the assigned functional limitations apply to Plaintiff's status as of September 2021 (or earlier). She notes Plaintiff has "chronic respiratory problems," but she does not specify the length of time, the severity of the problems in 2021, or whether the severity increased over time. Dr. Mainardi does not relate her opinion back the relevant time period (before September 30, 2021). She also does not tie her opinion to treatment records from any other provider from the relevant time period. *See Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) (affirming ALJ's decision to discount medical opinion where doctor's "conclusions were limited to Grisier's condition in 2012," and the opinion did not "make any findings regarding Grisier's condition during the relevant period," which ended with expiration of insured status); *see also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). It appears the pulmonary function test Dr. Mainardi cites was conducted in July 2023 (Tr. 653).

It is clear the ALJ found that Dr. Mainardi's opinion was inconsistent with the medical treatment evidence from the relevant time period (March 17, 2020 through September 30, 2021), and from the opinions of the State Agency physicians who reviewed Plaintiff's medical records. Plaintiff argues the ALJ "summarily dismiss[ed]" Dr. Mainardi's opinion "without identifying

specific inconsistencies," and failed to make any "connection between the earlier-discussed records and why those records undercut Dr. Mainardi's specific functional limitations." [Doc. 19 at Page ID # 811]. Specifically, Plaintiff argues the ALJ "failed to explain why normal ranges of motion or controlled pain levels were inconsistent with Dr. Mainardi's finding[s]" regarding Plaintiff's limitations in standing, walking, and remaining on task "due to her severe COPD." [*Id.* at Page ID # 812].

In making this argument, however, Plaintiff fails to mention other evidence the ALJ cites in the written decision, including the fact that Plaintiff "did not require treatment for complications of asthma/COPD or emergency room visits for exacerbations of asthma/COPD" during the relevant time period, and that Plaintiff's "respiratory impairment was generally controlled with the use of an albuterol inhaler" during the relevant time period (Tr. 39). As for Plaintiff's knee-related issues, the ALJ cited the fact that Plaintiff "did not have more extensive treatment such as steroid injections or knee surgery through the date last insured." (Tr. 39). The ALJ specifically mentioned at least some of the evidence Plaintiff identifies in her opening brief [Doc. 12 at Page ID # 787 n.1]. To the extent the ALJ failed to specifically discuss a particular notation or record, such failure does not constitute harmful error because "there is no requirement to cite to every piece of evidence or conclusion[.]" *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022). As mentioned, the ALJ also found the opinions of the State Agency physicians to be "generally persuasive because they are generally consistent with the claimant's treatment records **through the date last insured**." (Tr. 39 (emphasis added)).

As for supportability, Plaintiff argues the ALJ "failed to reference or discuss any of Plaintiff's treatment records when she was under Dr. Mainardi's care." [Doc. 12 at Page ID # 786]. Plaintiff acknowledges that the records from Dr. Mainardi post-date Plaintiff's date last insured,

but nevertheless contends that, "[w]here post-DLI evidence establishes the claimant's impairments existed continuously and in the same degree as before the expiration of the claimant's DLI, the evidence is relevant and should be considered." [*Id.*]. On this point, Plaintiff cites *Lowery v. Commissioner of Social Security*, 886 F. Supp. 2d 700 (S.D. Ohio 2012).

In *Lowery*, the court reversed the ALJ's decision to deny benefits, finding the ALJ erred in his assessment of the claimant's treating physician's opinion. On appeal to the district court, the Commissioner argued that, when reviewing the ALJ's decision, the court was "limited" to reviewing evidence that post-dated the claimant's alleged onset of disability date and that pre-dated the date last insured. *Id.* at 716 n.8. The court rejected that argument, reasoning that while the "ALJ generally only considers evidence from the alleged disability onset date through the date last insured," the ALJ is still permitted to consider "evidence relating back to a claimant's prior condition, even though obtained after the date last insured." *Id.* This was particularly true because the claimant's physician had begun treating the claimant months before the claimant's insured status expired. Further, the court specifically found that the treating physician's assessment established that the claimant's impairments, which stemmed from a military-vehicle accident that took place years earlier, "have existed continuously and in the same degree during her treatment relationship with Plaintiff." *Id.*

By contrast, in this case, Dr. Mainardi began treating Plaintiff more than a year after Plaintiff's insured status expired, and Plaintiff does not cite to any record evidence to show that her impairments were "in the same degree" in September 2021 as they were in May 2023 (when Dr. Mainardi began treating Plaintiff) or in April 2024 (when Dr. Mainardi offered her opinion). Plaintiff cites to various records from other providers from 2019–2021, which certainly reflect that Plaintiff had long-standing breathing and knee-related issues (as the ALJ found), but Plaintiff does

not address whether, for example, Plaintiff's condition worsened after her date last insured. She also does not address or attempt to explain how Dr. Mainardi's opinion reflects her condition as of September 2021. *See Walden v. Comm'r of Soc. Sec.*, No. 1:19-cv-00288-SKL, 2021 WL 328260, at *13 (E.D. Tenn. Feb. 1, 2021) ("The potential for Plaintiff's condition to continue to deteriorate after the expiration of his insured status does not support disability." (citation omitted)).

*Lowery* is also distinguishable because it involved application of the now-defunct treating physician rule, which required ALJ's to "give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians," and to give "good reasons" for the weight assigned to any treating physician's opinion. *Lowery*, 886 F. Supp. 2d at 712.

Plaintiff also cites to *Daniels v. Commissioner of Social Security*, No. 3:24-cv-2-DCP, 2024 WL 4181870 (E.D. Tenn. Sept. 12, 2024). Like *Lowery*, *Daniels* is distinguishable. In *Daniels*, the ALJ repeated the same recitation of the medical record to "explain" and "analyze" every medical opinion in the case. 2024 WL 4181780, at *5. Here, by contrast, it is clear the ALJ specifically considered whether to credit Dr. Mainardi's opinion individually. And, as the ALJ adequately explained, the ALJ found it should not be fully credited, in part because it was not consistent with the treatment records from the relevant time period and because Dr. Mainardi's own treatment records did not reflect Plaintiff's functioning during the relevant time period. Again, Plaintiff cites to some medical records from 2019–2021, and argues that these mean Dr. Mainardi's opinion "relates back" to the relevant time period, but she does not cite to any notations in Dr. Mainardi's opinion or treatment records to that effect.

The Court further notes the ALJ did include additional postural limitations than those assessed by the State agency physicians to account for Plaintiff's knee impairment (Tr. 39). The

ALJ also clearly considered that Dr. Mainardi did have a treating relationship with Plaintiff, although at the time, Plaintiff had only seen Dr. Mainardi on two occasions, six months apart.

In sum, the ALJ explained that Dr. Mainardi did not treat Plaintiff during the relevant time period, and throughout the written decision, the ALJ cited medical evidence related to the relevant time period, including the opinions of the State Agency physicians, that was not consistent with the extremely limited opinion offered by Dr. Mainardi. The Court has carefully reviewed the medical record, the parties' arguments, and the relevant law, and the Court finds no error in the ALJ's consideration of the medical opinion evidence.

### F. The ALJ's Decision is Supported by Substantial Evidence

The Court finds Plaintiff failed to show any harmful error in the ALJ's consideration of Dr. Mainardi's opinion, which is the only issue she has properly presented to the Court for consideration. Contrary to Plaintiff's argument, the record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the other evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at steps four and five. In short, notwithstanding Plaintiff's arguments about the Commissioner's post-hoc rationalization [*see* Doc. 19 at Page ID # 812], the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted).

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton*, 246 F.3d at 775, this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v.*

*Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . .") (citation omitted).

## V. CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Plaintiff's request for relief [Doc. 1; Doc. 12; Doc. 19] is **DENIED**; and

(2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 18] is **GRANTED**; and

(3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/

MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE